**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **P.O. DOMINIQUE JOHNSON** and **P.O. HASSAN GORDY**<br><br>v.<br><br>**CITY OF PHILADELHIA, et al.** | **CIVIL ACTION**<br><br>**NO. 20-472** |

<u>**MEMORANDUM**</u>

Baylson, J.                                                              June 12, 2020

## I.      INTRODUCTION

In this Civil Action, Plaintiffs—Philadelphia Police Officers Dominique Johnson and Hassan Gordy—allege that they were retaliated against for engaging in protected speech, and placed on disciplinary assignments in dangerous parts of Philadelphia.  Plaintiffs filed suit against the City of Philadelphia, Lieutenant Anthony Mirabella, Sergeant Francis Uitz, Sergeant Donna Grebolski, Captain Tyrell McCoy, Deputy Commissioner Joseph Sullivan, and John Does 1-10, alleging three counts under 42 U.S.C. § 1983:

1. **Count I:**  Retaliation in violation of the First Amendment;

2. **Count II:** Violation of Due Process by a State-Created Danger; and

3. **Count III:**  Municipal Liability asserted against the City of Philadelphia.

(ECF 8, Am. Compl. ¶¶ 73–99.)  Before this Court is Defendants' Motion to Dismiss.  Plaintiffs concede that the Motion to Dismiss Defendant Grebolski should be granted, but otherwise oppose dismissal.  For the reasons stated below, the Motion to Dismiss Plaintiffs' retaliation claims against Defendants McCoy and Sullivan will be granted, as will Defendant Grebolski's Motion to Dismiss, but Defendants' Motion to Dismiss will otherwise be denied.

1

## II.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

The facts alleged in the Amended Complaint are accepted as true and construed in the light most favorable to Plaintiffs.  Plaintiffs are both police officers employed with the Philadelphia Police Department.  (Am. Compl. ¶¶ 1–2.)  In December of 2018, Plaintiffs relieved two fellow officers from their post monitoring an abandoned property in North Philadelphia.  (Am. Compl. ¶¶ 10–11.)  When the two officers left, Plaintiffs performed a safety check on the property and found a squatter inside.  (Am. Compl. ¶¶ 12–13.)  After sending the squatter on his way, Plaintiffs waited in their patrol car until they were told by backup officers that they could leave.  (Am. Compl. ¶¶ 16–19.)

Twenty minutes after Plaintiffs left, however, they were told to return to the property.  (Am. Compl. ¶ 20.)  Upon return, Plaintiffs told Defendant Mirabella what happened earlier.  (Am. Compl. ¶ 21.)  The three then entered the property and discovered that the inside had been disturbed.  (Am. Compl. ¶ 22.)  Defendant Mirabella informed Plaintiffs that there were items missing from the property, and ordered them to locate the squatter for the missing items.  (Am. Compl. ¶ 23.)  Plaintiffs did not believe the squatter had taken the items, and were unable to find him.  (Am. Compl. ¶¶ 24–25.)  Plaintiffs then waited at the property for four hours before Internal Affairs arrived and took Plaintiffs' statements.  (Am. Compl. ¶¶ 26, 29.)  Internal Affairs also searched inside Plaintiffs' patrol vehicle, but did not find the missing items.  (Am. Compl. ¶ 28.)

As a result of the procedural violations stemming from the incident, Defendant Mirabella was disciplined, and in turn retaliated against Plaintiffs.  (Am. Compl. ¶¶ 31–32.)  While on patrol a few months later, Defendant Mirabella falsely accused Plaintiffs of sleeping during their shift, and, along with Defendant Uitz, placed them each on separate, overnight foot patrols in dangerous parts of Philadelphia without a patrol vehicle.  (Am. Compl. ¶¶ 33–43.)  Defendant Uitz told

Plaintiffs that they were being placed on the disciplinary beat because Defendant Mirabella was upset about the Internal Affairs investigation.  (Am. Compl. ¶ 49.)  Other police officers who were caught sleeping while on duty were not disciplined the same way as Plaintiffs.  (Am. Compl. ¶ 46.)

Plaintiffs continued to be placed on overnight foot patrols in dangerous parts of Philadelphia for the next several weeks.  (Am. Compl. ¶¶ 41, 58, 72.)  On a typical assignment, Plaintiffs' patrol areas typically required two officers, but Plaintiffs were assigned to patrol alone without the safety of a patrol vehicle, and other officers were ordered not to support Plaintiffs. (Am. Compl. ¶¶ 53, 55, 57.)  When Plaintiffs asked to be sent home, their requests were denied. (Am. Compl. ¶¶ 50–51.)

Several weeks into their patrols, Plaintiffs were on break in Plaintiff Johnson's car when Defendant Grebolski approached and accused Plaintiffs of patrolling together.  (Am. Compl. ¶ 58– 60.)  This resulted in Plaintiffs being reassigned to solo foot patrols in different areas of Philadelphia.  (Am. Compl. ¶ 61.)  Plaintiff Johnson's assignment was in another dangerous part of the city, so Plaintiff Gordy kept watch over her while he patrolled his area.  (Am. Compl. ¶ 62.) This caused Plaintiff Gordy to be reassigned to yet another solo foot patrol in another dangerous area of Philadelphia.  (Am. Compl. ¶ 63.)

Plaintiffs asked for help from the police union, but received no response.  (Am. Compl. ¶¶ 64–65.)  Plaintiffs also sent a letter to Defendant Sullivan's office, and tried set up a meeting with Defendant McCoy.  (Am. Compl. ¶¶ 66, 69.)  Defendant Sullivan never responded to Plaintiffs' letter, and when Plaintiffs followed up with a phone call, they were told never to call Defendant Sullivan's office.  (Am. Compl. ¶¶ 70–71.)  Similarly, after Plaintiffs had waited at Defendant McCoy's office for over one hour, Defendant McCoy cancelled their meeting and never

rescheduled.  (Am. Comp. ¶¶ 67–68.)  Ultimately, Plaintiffs decided to take leave instead of continuing to patrol dangerous parts of Philadelphia. (Am. Compl. ¶ 72.)

Plaintiffs filed a Complaint in the Court of Common Pleas of Philadelphia County.  (ECF 1, Ex. B.)  After Defendants removed the Complaint to this Court, (ECF 1), Plaintiffs filed an Amended Complaint, (ECF 8.)  Defendants filed a Motion to Dismiss, (ECF 10 ("MtD")), and Plaintiffs filed a Response in Opposition, (ECF 11 ("Pls.' Opp'n").)

## III.   LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true [and] construe[s] the complaint in the light most favorable to the plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted.  Iqbal, 556 U.S. at 678, 684.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555).  Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556).

## IV.   PARTIES' CONTENTIONS

### A.  Defendants

Defendants Grebolski, McCoy, and Sullivan contend that Plaintiffs have not stated a retaliation or state-created danger claim against them.[1]  Defendant Grebolski argues that her role in the entire incident was minimal, and she was not implicated in any of the alleged constitutional violations.  (MtD 10–11.)  Defendants McCoy and Sullivan contend that Plaintiffs have not pleaded that they were directly involved in any of the allegedly unconstitutional conduct, or that they knowingly acquiesced in the violations of Plaintiffs' constitutional rights.  (MtD 10–11.)

Defendants challenge Plaintiffs' state-created danger claim by arguing that Plaintiffs do not allege that they suffered any harm.  (MtD 8.)  But even if Plaintiffs had alleged a harm, according to Defendants, the risk of encountering a dangerous situation while on patrol was inherent in Plaintiffs' jobs as police officers, and thus Plaintiffs have not alleged that their harms were caused by any affirmative act taken by Defendants.  (MtD 7–9.)

The City argues that Plaintiffs have not stated a claim for municipal liability because they did not adequately plead that Defendants McCoy and Sullivan were final decisionmakers.  (MtD 5–6.)  The City also argues that Plaintiffs have not pleaded facts to support their contention that Defendants McCoy or Sullivan acted with deliberate indifference.  (MtD 6.)

### B.  Plaintiffs

Plaintiffs concede that Defendant Grebolski should be dismissed, and ask that the Court do so without prejudice.  As to Defendants McCoy and Sullivan, however, Plaintiffs contend that they

---

[1] Defendants Grebolski, McCoy, and Sullivan are the only Defendants moving to dismiss Plaintiffs' retaliation claim in Count I.  Plaintiffs have agreed that Defendant Grebolski should be dismissed from this Action.

state retaliation and state-created danger claims against those two defendants because they had a "realistic and reasonable opportunity" to intervene and failed to do so.  (Pls.' Opp'n 9–11.)

Plaintiffs contend that they have stated a plausible due process claim based on a state-created danger against all Defendants.  Because of Defendant Mirabella's affirmative acts of placing Plaintiffs on disciplinary patrols, Plaintiffs argue that they became more vulnerable to danger. (Pls.' Opp'n 6–7.)  Plaintiffs also assert that, as a result of Defendant Mirabella's actions, they suffered emotional harm, as they alleged in the Amended Complaint.  (Pls.' Opp'n 8–9.)

Plaintiffs also argue that they sufficiently pleaded a claim for municipal liability because they alleged that Defendants McCoy and Sullivan were final decisionmakers and, after given a reasonable opportunity, failed to act such that they were deliberately indifferent to the violation of Plaintiffs' rights.  (Pls.' Opp'n 11–13.)

## V.   DISCUSSION

### A.  Retaliation

Plaintiffs assert First Amendment retaliation claims against each Defendant, but only Defendants Grebolski, McCoy, and Sullivan move to dismiss the retaliation claims against them. Plaintiffs agree to dismiss their claims against Defendant Grebolski, but oppose dismissal of their claims against Defendants McCoy and Sullivan.  The Amended Complaint alleges that by assigning Plaintiffs to patrol in dangerous areas of Philadelphia, Defendants retaliated against Plaintiffs for reporting misconduct to Internal Affairs in violation of the First Amendment.  (Am. Compl. ¶¶ 74–77.)  However, Plaintiffs' allegations do not make clear how each Defendant's acts or omissions give rise to individual liability for retaliation.  The Court will therefore grant Defendants McCoy and Sullivan's Motion to Dismiss Count I, with leave to amend for Plaintiffs

to allege their retaliation claims with greater specificity as to which defendant is responsible for which act or omission giving rise to liability for retaliation under the First Amendment.

### B. State-Created Danger

The elements of Plaintiffs' claim that Defendants violated their due process rights by exposing them to a state-created danger are that:

(1) "the harm ultimately caused was foreseeable and fairly direct;"

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that "the plaintiff was a foreseeable victim of the defendant's acts," or a "member of a discrete class of persons subjected to the potential harm brought about by the state's actions," as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006) (footnotes and citations omitted).

Defendants first contest whether Plaintiffs have satisfied the first element because, according to Defendants, Plaintiffs did not suffer any harm as a result of their actions. But the Amended Complaint alleges that Plaintiffs suffered emotional damages as a result of being placed on the overnight patrols. (Am. Compl. ¶ 79.) Defendants do not contend that these categories of harm are illegitimate, and therefore this Court is satisfied that Plaintiffs have adequately alleged this element.

Defendants also contest whether the Amended Complaint satisfies the fourth element of the state-created danger test. "The fourth element . . . asks whether a defendant exercised his or her authority to create a foreseeably dangerous situation." Kaucher v. Cnty. of Bucks, 455 F.3d 418, 432 (3d Cir. 2006). An affirmative act of authority that "render[s] the plaintiff 'more vulnerable to danger than had the state not acted at all'" satisfies this element if there is "a direct

causal relationship between the affirmative act of the state and plaintiff's harm." Id. (quoting Bright, 443 F.3d at 281).

Defendants argue that, under Kaucher, Plaintiffs have not alleged a causal relationship between any affirmative act, and the harm that they experienced.  In Kaucher, a correctional officer claimed that he and his wife contracted an infection due to an outbreak at the county jail, but the only affirmative act that the plaintiffs identified was a memorandum that was circulated to calm concerns about the infection.  Id. at 422, 433–34.  The Court held that, even if the memorandum had not been circulated, the correctional officer would have faced the same risk of contracting the infection simply by performing his duties as a correctional officer.  Id. at 434–35.  The affirmative act of circulating the memorandum, therefore, did not expose the plaintiffs to a greater risk of contracting the infection, and thus was not the but-for cause of their injuries.  Id. at 435.

Kaucher, however, was decided on summary judgment, and therefore the Court had the benefit of a factual record when deciding whether the correctional officer's risk of contracting an infection was the product of dangers inherent in his job, rather than any affirmative act by the defendants.  Id. at 420.  Here, it would be inappropriate to dismiss this claim before the parties have an opportunity to develop a similar factual record.

In addition, the Court in Kaucher suggested that the plaintiffs might have satisfied the fourth element of their state-created danger claim if the correctional officer had been forced to perform his duties over objection, with proper safety measures removed, or under threat of termination.  Id. at 435.  As alleged in the Amended Complaint, Defendants forced Plaintiffs to patrol overnight without the safety a patrol vehicle or a partner, both of which were usually provided for overnight patrols in the areas Plaintiffs were assigned.  (Am. Compl. ¶¶ 41–42, 47–48, 53, 55–57, 61, 63.)  Defendants also forced Plaintiffs to conduct these patrols despite their

objections and requests to be sent home.  (Am. Compl. ¶¶ 50–51.)  With all inferences drawn in favor of Plaintiffs, these circumstances appear to be similar to those the Third Circuit in <u>Kaucher</u> indicated could have supported a state-created danger claim.  455 F.3d at 435; <u>see also</u> <u>Kedra v. Schroeter</u>, 876 F.3d 424, 436 n.6–7 (3d Cir. 2017) (holding that a firearms instructor engaged in affirmative acts that satisfied the fourth element of the state-created danger test when he disregarded established safety protocol and shot a trainee who was at a mandatory training with no protection because the instructor  "created an opportunity for harm that would not have otherwise existed" (quoting <u>Rivas v. City of Passaic</u>, 365 F.3d 181, 197 (3d Cir. 2004)).  <u>Kaucher</u> thus does not warrant dismissal of Plaintiffs' state-created danger claim.

Defendants McCoy and Sullivan also move individually to dismiss Plaintiffs' state-created danger claims against them.  A police officer can be held individually liable under Section 1983 even if he or she does not directly participate in the constitutional violation if he or she fails to intervene when given a "realistic and reasonable opportunity to [do so]."  <u>Smith v. Mensinger</u>, 293 F.3d 641, 650–51 (3d Cir. 2002).  Defendants McCoy and Sullivan contend that the Amended Complaint fails to allege that Plaintiffs' communications with Defendants McCoy and Sullivan contained sufficient detail to inform them that Plaintiffs were being placed in a state-created danger, and thus they did not have a realistic and reasonable opportunity to intervene.

The Amended Complaint alleges that Plaintiffs set up a meeting with Defendant McCoy specifically to discuss the events that Plaintiffs allege violated their constitutional rights.  (Am. Compl. ¶ 66.)  While Plaintiffs were waiting to meet with Defendant McCoy at his office, Defendant McCoy cancelled the meeting and never rescheduled.  (Am. Compl. ¶¶ 66–67.)  Plaintiffs also hand-delivered a letter to Defendant Sullivan's office, which discussed the events Plaintiffs allege violated their constitutional rights.  (Am. Compl. ¶ 69.)  After receiving no

response, Plaintiffs followed up with a phone call, but were turned away and told never to call Defendant Sullivan's office again.  (Am. Compl. ¶ 70.)

Viewed in the light most favorable to Plaintiffs, the Court finds it reasonable to infer that Defendant McCoy was aware of the substance of Plaintiffs' state-created danger claims, and that Defendant Sullivan received Plaintiffs' letter.   Whether Plaintiffs' communications with Defendants McCoy and Sullivan were detailed enough to put them on notice of the alleged constitutional violations is a matter best left for summary judgment.  Accepting the allegations as true, and viewing them in the light most favorable to Plaintiffs, it can be reasonably inferred that Defendants McCoy and Sullivan had a realistic and reasonable opportunity to intervene, and failed to do so.  The Motion to Dismiss Plaintiffs' state-created danger claim will be denied, except as to Defendant Grebolski, who Plaintiffs agree should be dismissed.

### C.  Municipal Liability

To hold the City of Philadelphia liable for the purported constitutional violations, Plaintiffs needed to allege that a municipal policy or custom caused the violations.  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583–84 (3d Cir. 2003).  That policy or custom must have been established by a "decisionmaker possess[ing] final authority to establish municipal policy" over the actions at issue.  Id. at 584 (alteration in original) (quoting Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996)).  Here, Plaintiffs allege that Defendant McCoy was the final decisionmaker over personnel matters, and Defendant Sullivan was the final decisionmaker over patrol operations.   (Am. Compl. ¶¶ 91–92.)   Accepting these allegations as true, Plaintiffs have adequately alleged that these two high-ranking officers were final decisionmakers within their spheres of authority.

In addition, the "acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works" in three circumstances:  (1) when "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy;" (2) when "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself;" and (3) when "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"  Natale, 318 F.3d at 584 (alterations in original) (quoting Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 417–18 (1997) (Souter, J. dissenting)).

Plaintiffs contend that a municipal policy or custom can be inferred here because Defendants McCoy and Sullivan failed to act when Plaintiffs informed them of the circumstances surrounding their patrol assignments.  The City of Philadelphia contests whether Plaintiffs have alleged that Defendants McCoy and Sullivan were deliberately indifferent to the alleged constitutional violations because Defendant McCoy never met with Plaintiffs, and Plaintiffs have not alleged that Defendant Sullivan ever read Plaintiffs' letter, or that the letter was sufficiently detailed to inform him of the situation.

As explained above, at this stage, the Court is satisfied that the allegations concerning Plaintiffs' communications with Defendants McCoy and Sullivan permit the reasonable inference that Defendants McCoy and Sullivan were aware that Plaintiffs' constitutional rights were being violated.  The precise details of those contacts can be explored more fully at discovery.  Because it has been adequately alleged that Defendants McCoy and Sullivan were aware of the alleged

constitutional violations, and that they failed to intervene, it can be reasonably inferred that Defendants McCoy and Sullivan were deliberately indifferent to the continuing course of events that Plaintiffs allege violated their constitutional rights.  The City of Philadelphia's Motion to Dismiss Plaintiffs' municipal liability claim will be denied.

## VI.    CONCLUSION

For the reasons stated above, Defendant Grebolski's Motion to Dismiss will be granted, Defendants' Motion to Dismiss Plaintiffs' retaliation claims against Defendants McCoy and Sullivan will be granted, and the remainder of Defendants' Motion to Dismiss will be denied.  An appropriate Order follows.

O:\CIVIL 20\20-472 Johnson v City of Philadelphia\20cv472 Memo re Motion to Dismiss.docx